**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| T.S.,<br><br>    Plaintiff,<br><br>  v.<br><br>ROBERT F. KENNEDY JR., Secretary of<br>Health and Human Services,<br><br>    Defendant. | Civil Action No. _____<br><br>**COMPLAINT** |

**PRELIMINARY STATEMENT**

1. Plaintiff T.S.[1] appeals a final decision of the Secretary of the Department of Health and Human Services that denied Medicare coverage for special enteral formula and related supplies that she requires to survive.

2. Plaintiff cannot eat or drink by mouth due to her medical conditions. She relies on enteral formula, administered directly to her stomach through a gastrostomy tube (G-tube), for all of her nutritional intake. Plaintiff has used a prescribed special formula since late 2020 to the present because she cannot tolerate standard formula. There has been no change in Plaintiff's medical need for the special formula since she started using it over five and half years ago.

3. Plaintiff contests Defendant's final decision that her special formula was "not medically reasonable and necessary" from August 30 to November 1, 2023. The formula was covered by *Medicaid* before these dates, and by *Medicare* after these dates. The claims from the specific dates at issue were denied only because of an administrative change in Plaintiff's

---

[1] Plaintiff is submitting a motion to proceed under partial anonymity concurrently with this Complaint.

insurance status that has since been resolved.

4.      The record contains substantial evidence that the special formula and related supplies meet Medicare's fundamental "reasonable and necessary" standard for coverage. Yet the Secretary imposed a baseless condition that medical records supporting Plaintiff's use of special formula must be precisely "contemporaneous" to the dates of service at issue in order to meet the "reasonable and necessary" criterion. That was incorrect. The Secretary's analysis regarding financial liability for the formula and supplies is also erroneous. The decision should be reversed.

## JURISDICTION AND VENUE

5.      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), made applicable to and incorporated in the Medicare statute by 42 U.S.C. § 1395ff(b)(1)(A). Plaintiff appeals a final decision of the Secretary that denied coverage for her special enteral formula and associated supplies. Plaintiff has exhausted her administrative remedies. The Administrative Law Judge ("ALJ") Appeal Number is 3-14537834843. The Medicare Appeals Council ("Council") Docket Number is M-25-2845. This Complaint is timely filed within 60 days of Plaintiff's receipt of the Council's March 30, 2026 denial. 42 C.F.R. §§ 405.1130, 405.1136(c)(1)-(2). The amount in controversy exceeds $1960. *Id*. §§ 405.1006(c), 405.1136(a)(1).

6.      Venue is proper in this District pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1391(e). *See also* 42 C.F.R. § 405.1136(b)(1).

## PARTIES

7.      Plaintiff T.S. is a 68-year-old resident of Massachusetts. She is and has been a Medicare beneficiary at all times relevant to this action. She submits a motion to proceed under partial anonymity along with this Complaint.

2

8.  Defendant Robert F. Kennedy Jr. is Secretary of the U.S. Department of Health and Human Services ("the Secretary") and as such is responsible for the administration of the Medicare program. The Secretary is the proper Defendant in this appeal of a Medicare Appeals Council decision. 42 C.F.R. § 405.1136(d)(1). He is sued in his official capacity.

## LEGAL FRAMEWORK

9.  Medicare is the federal health insurance program for people who are at least age 65 or people who are under 65 with certain disabilities. 42 U.S.C. § 1395 *et seq*.

10.  For Medicare to cover any item or service it must be defined as a covered benefit and be "reasonable and necessary" for the beneficiary. 42 U.S.C. § 1395y(a)(1)(A).

### Enteral Nutrition Provisions

11.  Medicare Part B is the portion of the program that generally covers outpatient care, such as doctors visits and medical equipment and supplies. Enteral formula is covered by the "prosthetic device" benefit of Medicare Part B. 42 U.S.C. §§ 1395k(a); 1395x(s)(8) (covering prosthetic devices that "replace all or part of an internal body organ"). *See also* 42 C.F.R. § 410.38.

12.  Regional Medicare Administrative Contractors (MACs) make initial coverage determinations on claims submitted by medical providers and suppliers within their jurisdiction. MACs can issue a Local Coverage Determination (LCD) to provide guidance on coverage for a particular item or service in their region. 42 U.S.C. § 1395ff(f)(2)(B). An LCD binds only the MAC itself. 42 C.F.R. §§ 405.1062(a)-(b).

13.  The relevant MAC in this case has adopted LCD L38955, titled "Enteral

Nutrition."[2] The LCD states that its purpose is to provide information "regarding 'reasonable and necessary' criteria" for enteral nutrition. It also states that "[i]n addition to the 'reasonable and necessary' criteria contained in this LCD there are other *payment* rules," which are discussed in other listed documents. (Emphasis added).

14.   The LCD states that enteral nutrition is covered:

for a beneficiary who requires feedings via an enteral access device [tube] to provide sufficient nutrients to maintain weight and strength commensurate with the beneficiary's overall health status and has a permanent:

A.  full or partial non-function or disease of the structures that normally permit food to reach the small bowel; OR,

B.  disease that impairs digestion and/or absorption or an oral diet, directly or indirectly, by the small bowel.

LCD L38955.

15.   The LCD also states that adequate nutrition must not be possible by dietary adjustment and/or oral supplements, and, if coverage requirements for enteral nutrition are met, "medically necessary nutrients, administration supplies, and equipment are covered." LCD L38955.

16.   Regarding coverage of "nutrients" (enteral formulas), the LCD states that certain standard types are "appropriate for the majority of beneficiaries requiring enteral nutrition." It further states:

The medical necessity for special enteral formulas (B4149, B4153, B4154, B4155, B4157, B4161, and B4162) must be justified in each beneficiary. If a special enteral nutrition formula is provided and if the medical record does not document why that item is medically necessary, it will be denied as not reasonable and necessary. (Refer to the LCD-related Policy Article for policy

---

[2]  Available  at:  https://localcoverage.cms.gov/mcd_archive/view/lcd.aspx?lcdInfo=38955:22. Note that this is the version of the LCD that was in effect for items and services provided after 10/1/2023, which covers the latter portion of Plaintiff's denied claims. *See infra* ¶ 43. The version in effect for the earlier portion of Plaintiff's denied claims has exactly the same pertinent language: https://localcoverage.cms.gov/mcd_archive/view/lcd.aspx?lcdInfo=38955:20&.

specific documentation requirements.)
LCD L38955.

17. The special enteral formula required and used by Plaintiff is coded B4153[3] and is thus addressed by the above provision in LCD L38955. The "medical record" must document why it is medically necessary.

18. The LCD-related Policy Article[4] referred to within the above LCD provision further states that for "[s]pecial nutrient formulas," including the one used by Plaintiff:

> the beneficiary's medical records must specify why a standard formula cannot be used to meet the beneficiary's metabolic needs. This documentation may include other formulas tried and failed or considered and ruled out. A diagnosis alone is not sufficient to support the medical need for a specialty formula. For example, an order for a diabetes-specific formula may be supported by documentation in the medical record that the beneficiary has a diagnosis of diabetes mellitus and has experienced severe fluctuations of glucose levels on standard formula.

19. Medicare also issues guidance through manuals. Like LCDs, manual provisions are not binding on ALJs or the Council. 42 C.F.R. §§ 1062(a)-(b).

20. The Medicare Claims Processing Manual (MCPM), Pub. # 100-4, outlines detailed procedures for providers and suppliers to submit proper claims to Medicare. Its guidance regarding proper claims-handling or *billing* procedures is distinct from guidance concerning *coverage* criteria, such as LCDs. LCDs help elucidate the substantive "reasonable and necessary" standard. The MCPM and similar claims processing guidance instruct suppliers on their administrative paperwork, record-keeping, and claims-handling responsibilities.

---

[3] Healthcare Common Procedure Coding System (HCPCS) numbers are standardized codes used by medical providers and suppliers to bill Medicare and other insurers.

[4] A58833, available at https://www.cms.gov/medicare-coverage-database/view/article.aspx?articleId=58833&ver=17. Articles are companion documents MACs publish to provide specific billing, coding, and documentation instructions for medical items or services. As noted in Article A58833, they contain information relating to determinations "other than" those based on "reasonable and necessary" requirements. *Id.*

21.     Chapter 20 of the MCPM[5] addresses billing requirements for prosthetic devices, including parenteral and enteral nutrition (PEN) therapy.

22.     The MCPM provision cited by the Secretary's final decision in this case concerns information that the ordering practitioner must document for enteral nutrition patients on a "certificate of medical necessity" (CMN). MCPM Ch. 20 § 100.2.2.2.  Earlier, the MCPM makes clear that actual CMN "forms" are no longer required because they are duplicative of information available "either on the claim or in the medical record." *Id*. § 100 (CMNs not required since Jan. 1, 2023); *see also* 42 C.F.R. § 424.11(b) (no specific forms required for certification/recertification; supporting information contained in other provider records suffices.

23.     MCPM Ch. 20 § 100.2.2.2 states that required information for enteral nutrition patients includes the patient's general condition, clinical assessment, and for patients requiring special formula, "additional medical justification."

24.     None of the above-cited authorities (statute, regulations, LCD L38955, or MCPM Ch. 20) make reference to a need for "contemporaneous" medical records to demonstrate that special enteral formula is "reasonable and necessary" within the meaning of the Medicare statute. References are to "the medical record" or "medical records" as a whole. *See also* 42 C.F.R. § 410.38(d)(1) ("totality of the medical records" to be considered when reviewing for compliance with standard written order/prescription elements).

**Limitation on Liability Provisions**

25.     Under §1879 of the Social Security Act (also known as the "Limitation on Liability" provision), Medicare providers absorb the costs of denied items and services unless

---

[5] Available at: https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/clm104c20.pdf.

they issued a valid prior written notice to the beneficiary that the item or service would not be covered. 42 U.S.C. § 1395pp; 42 C.F.R. §§ 411.400-411.408.  The written notice must contain sufficient information for the beneficiary to understand why Medicare, which usually covers the item, will likely not it in this instance. 42 C.F.R. § 411.404; MCPM Ch. 30 § 40.

26.    Medicare has created a standardized Advance Beneficiary Notice (ABN), Form CMS-R-131, that providers and suppliers can issue to beneficiaries to provide prior written notice that an item or service that Medicare usually covers may not be covered in a specific case. For prosthetic supplies such as enteral formula, this typically because supplier believes Medicare will not consider the item to be reasonable and necessary in the specific instance.

27.    Validly-issued ABNs allow beneficiaries to make an informed decision about whether to receive the supplies and accept financial liability. They also allow the supplier to bill the beneficiary if Medicare denies the claim by shifting liability to the beneficiary. Medicare provides detailed instructions for the issuance of valid ABNs. MCPM Ch. 30 §§ 50 – 50.17.

28.    Medicare prohibits the use of "routine" or "blanket" ABNs. Notice must be given "on the basis of a genuine judgment about the likelihood of Medicare payment for that individual's claim." MCPM Ch. 30 § 40.2.2.C; *see also id*. (notices to be given only when there is "some genuine doubt that Medicare will make payment"). In other words, ABNs should be issued when the supplier has an informed reason to expect Medicare will not cover a specific item, and not simply as a way to shift financial risk.

29.    Medicare instructs that the notice "must give the beneficiary a reasonable idea of why the notifier is predicting the likelihood of Medicare denial so that the beneficiary can make an informed decision whether or not to receive the item or service and pay for it." It also directs that "[l]isting several reasons which apply in different situations without indicating which reason

7

is applicable in the beneficiary's particular situation generally is not an acceptable practice." MCPM Ch. 30 § 40.2.1.C.

30.    Medicare provides specific directions for issuing ABNs to beneficiaries who are "dually eligible" and/or have "Qualified Medicare Beneficiary" (QMB) benefits. MCPM Ch. 30 § 50.17.B. These are low-income beneficiaries. Dually-eligible individuals have coverage from both Medicare and Medicaid. Medicaid is a joint federal-state program that provides health coverage to individuals with limited income and resources. It is the health care payer of last resort for people with more than one form of coverage. 42 U.S.C. § 1396(a)(25). The QMB program helps low-income Medicare beneficiaries by paying for certain out-of-pocket expenses, such as Medicare premiums and deductibles.

31.    Due to billing restrictions that apply to dually eligible and/or QMB beneficiaries, suppliers must strike through certain language on the standard ABN form when it is delivered to such beneficiaries. MCPM Ch. 30 § 50.17(B) (requiring provider to cross out "You may ask to be paid now," and "I understand that if Medicare doesn't pay, I am responsible for payment....") The modification reflects that suppliers must refrain from billing these low-income beneficiaries until certain steps have been taken in conformance with their rights and protections. *Id*.

32.    If a beneficiary does not receive valid prior written notice of non-coverage, financial liability does not shift to them. 42 U.S.C. § 1395pp; MCPM Ch. 30 §§ 50A-50B.

## FACTS

### Medical Background

33.    Plaintiff is a 68-year-old Medicare beneficiary with, *inter alia*, esophageal stricture

8

(abnormal narrowing of the esophagus), and atrophic glossitis[6] with severe oral pain. Because of these conditions she is unable to eat, drink, or take medications orally. All forms of nutrition must be administered via G-tube feeding.[7] Plaintiff's then-primary care provider, Casey Gaffney, Physician Assistant-Certified, confirmed in a February 15, 2024 written statement that Plaintiff's enteral nutrition is anticipated to be a "life-long need."

34.    Plaintiff's need for a G-tube as well as other physical health conditions were caused by severe domestic violence that she experienced.

35.    Plaintiff was prescribed a special formula, Kate Farms Peptide 1.5, starting in or around October 2020 because she cannot tolerate standard formula. Kate Farms Peptide 1.5 formula is easier for some individuals to digest than standard formula both because of its ingredients (which avoid common allergens), and because the protein chains are broken down into shorter amino acid chains (peptides). This replicates the early stages of digestion, making the nutrients easier to absorb for people with gastrointestinal impairments.

36.    As explained in P.A. Gaffney's 2024 letter, Plaintiff had tried standard formula but had very adverse responses to it. Plaintiff cannot tolerate soy, dairy, sodium caseinate (milk), calcium caseinate (milk), corn syrup, and maltodextrin, which were in the standard formula. It caused Plaintiff to have diarrhea, vomiting, bloating, excessive gas, stomach aches and pains,

---

[6] Also known as "bald tongue," a condition in which the tongue loses its small rough projections (papillae). The resulting smooth tongue is often painful, burning, and/or numb, with dysfunction of taste. Chun-Pin Chiang, *et al*., Atrophic Glossitis: Etiology, Serum Autoantibodies, Anemia, Hematinic Deficiencies, Hyperhomocysteinemia, and Management, 119 J. Formosan Med. Ass'n 774, 775 (2020).

[7] Enteral nutrition, commonly called "tube feeding," provides nutrition directly into the gastrointestinal tract through an enteral access device (feeding tube) that is placed with its tip in the stomach or small intestine. Enteral nutrition is a liquid food containing all nutrients required to meet nutrition needs. American Society for Parenteral and Enteral Nutrition, What is Enteral Nutrition? https://nutritioncare.org/about/what-we-do/nutrition-support/what-is-enteral-nutrition/ (last visited May 27, 2026).

maldigestion, malabsorption, and weight loss that jeopardized her health. Kate Farms Peptide 1.5 formula, on the other hand, is free of the ingredients that Plaintiff cannot tolerate.

37. Kate Farms Peptide 1.5 is 500 calories per bottle, allowing for sufficient daily caloric intake that meets Plaintiff's nutritional needs of 1500 calories per day. Due to Plaintiff's medical condition, P.A. Gaffney prescribed 1500 calories per day of Kate Farms Peptide 1.5 formula, which Gaffney stated is "medically necessary to sustain this patient's life."

38. Plaintiff has done well on Kate Farms Peptide 1.5 formula. She has not experienced the intense adverse reactions she did on standard formula, nor the health-jeopardizing weight loss.

**Insurance Background**

39. When Plaintiff started using enteral formula she was under 65 years old. She had Medicare on the basis of her disabling conditions, and she also received health coverage from Medicaid (MassHealth).

40. From Plaintiff's perspective, there were no problems with coverage of Kate Farms Peptide 1.5 formula when she was dually eligible for both Medicare and Medicaid. However, when Plaintiff turned 65, different Medicaid eligibility criteria applied and she lost her Medicaid coverage for health services in or around August 2023. However she retained her QMB benefits that help cover Medicare's out-of-pocket costs.

41. Plaintiff was not aware of coverage problems for her special formula and associated supplies until November 2023. This was when a representative from the formula supplier – Coram Infusion Services ("Coram"), which had been the supplier throughout – alerted Plaintiff that coverage of formula had stopped. Plaintiff and Coram subsequently had multiple discussions in early December 2023 regarding what was required for Medicare to cover the formula. Coram

had not previously spoken with Plaintiff about special medical justification to obtain Medicare coverage of these medically necessary supplies.

42. Plaintiff also learned from Coram in or around November 2023 that there was a balance on her account. She entered into an agreement with Coram to make partial payment so that she could continue receiving the formula and supplies. Plaintiff was very distressed by the non-coverage of her life-sustaining formula.

43. After Plaintiff's lawyer spoke with Coram in or around September 2024, Plaintiff learned that while she had been dually eligible for Medicare and Medicaid, Coram had been "bypassing" Medicare through a procedure it described as "standard practice." It would first submit claims to Medicare coded as "non-covered" and without documentation that would have been required for Medicare payment. When Medicare denied those claims, Medicaid would pay. But once Plaintiff's Medicaid was discontinued, the formula and supplies were not covered at all.

44. By the time Coram alerted Plaintiff of the non-coverage, she had accumulated the denied claims at issue in this case. In total, Plaintiff was denied coverage for the special formula for dates of service August 30 – September 28, 2023 and October 3 – November 1, 2023 (code B4153), and for the associated feeding supply kits for dates of service August 30, 2023 – September 13, 2023 and October 3 – October 30, 2023 (code B4034). The costs for these claims totaled nearly $5,000.

45. Working with her health care providers, Plaintiff obtained the documentation Coram requested showing her need for special formula. Since approximately February 2024, Medicare has covered Kate Farms Peptide 1.5 formula and related supplies without incident.

**Administrative Proceedings**

46. Plaintiff pursued the initial appeal of her denied Medicare claims *pro se*. The

11

Medicare Administrative Contractor (MAC) (first-level appeal contractor) issued a redetermination on April 4, 2024, denying coverage for the formula and supplies and finding Plaintiff financially liable. Plaintiff requested reconsideration with assistance from a legal aid attorney. On November 18, 2024, the Qualified Independent Contractor (QIC) (second level) upheld the denial of coverage, but found that the supplier (Coram), and not Plaintiff, was liable for the costs of the denied services because the case file did not include an Advance Beneficiary Notice (ABN) or any other documentation that Plaintiff had been given prior written notice that Medicare would not pay for the items at issue.

47.    Coram then submitted a request for an ALJ hearing (third level of appeal) because it disagreed that it was financially liable for the claims. In its January 9, 2025 ALJ appeal request, Coram claimed that the medical records demonstrated "no evidence of an impairment of the structures that normally permit food to reach and be absorbed in the small bowel" (*i.e.*, no evidence that Plaintiff required enteral nutrition at all), and that "the patient and her physician failed to provide any qualifying medical record documentation to support coverage criteria for the dates in question."

48.    As for liability, Coram submitted a standard ABN form that had been signed by Plaintiff on April 4, 2022, and which it claimed had shifted liability for the claims under appeal to Plaintiff. Coram argued that since the "tube feeding is statutorily non-covered due to a lack of medical necessity" and Plaintiff had signed the ABN, Plaintiff should be liable for the costs of the denied services.

49.    On the ABN dated April 4, 2022, Coram had indicated the reason it thought Medicare would not cover the Kate Farms Peptide 1.5 formula or associated supplies was that the "medical record does not support a non-function or disease of the structures that normally

12

permit food to reach the small bowel; or a condition that will require the use of tube feeing for a period of greater than 90 days." It also wrote: "The medical record does not support a medical need for use of the specialty formula, Kate Farm Peptide 1.5, as opposed to standard formula."

50.    "Option 1" on the ABN was checked, which indicated that Plaintiff wanted to receive the formula and supplies. It also stated "You may ask to be paid now," and "I understand that if Medicare doesn't pay, I am responsible for payment." No language was crossed out, although Plaintiff was dually eligible for Medicare and Medicaid at the time.

51.    Plaintiff submitted additional records at the ALJ level as well, including a second statement from P.A. Gaffney, dated February 14, 2025. That statement indicated that Coram had "only ever reached out to our office to request paperwork for MassHealth [Medicaid], not Medicare. It is also to be understood that the details in my previous letter of medical necessity dated 2/15/2024 [*see supra* ¶¶ 33, 36-37] clinically applied to [Plaintiff] from 2021 through that time. There were no changes in her clinical circumstance between the denied 2023 claims and her approval [for] coverage in February 2024."

52.    After a hearing in which Coram and Plaintiff participated, the ALJ issued a decision on April 5, 2025, upholding the denial of coverage. He claimed the record lacked a required "Standard Written Order" dated prior to the items on appeal, and stated that there were "no medical records submitted on or prior to the dates in review." He also found Plaintiff "liable for payment," because the April 2022 ABN had "properly alerted the Beneficiary that she needed further medical documentation showing the medical need for the specialty formula."

53.    Plaintiff timely appealed to the Council, Medicare's highest level of administrative review. Plaintiff's counsel submitted newly obtained evidence to the record, accepted by the Council. Plaintiff also pointed out to the Council that it was her understanding based on

conversations with Coram's representatives that she had to sign the ABNs that had been presented to her to receive her formula and supplies, and she had not been given an explanation from Coram about their billing practices (only learning of them in September 2024 from her attorney).

54. In its decision of March 30, 2026, the Council, first, agreed with Plaintiff that there was a Standard Written Order in the record created prior to the dates of service at issue (March 11, 2023), contrary to the ALJ's conclusion. The Council then cited to authorities, including the statute, LCD L38955, and MCPM Ch. 20 § 100.2.2.2, noting that the "beneficiary's medical records must adequately document the specific condition and the need for the special enteral formula" (citing to LCD L38955 and its accompanying Policy Article, A58833).

55. The Council noted Plaintiff's diagnoses and that her nutrition is taken via G-tube. It acknowledged progress notes from December 2021 through March 2022 documenting that her "weight was improving as a result of taking the special formula and that she was intolerant to ingredients in other formula," but it stated that "these records were produced more than a year and a half before the first date of service."

56. The Council likewise conceded that the record contained "progress notes dated November 13, 2023, December 11, 2023, and February, 12 2024, indicat[ing] [Plaintiff] required specialty formula because she was intolerant of ingredients in other formulas and experienced, among other things, nausea, vomiting, and diarrhea while taking previous formulas." However, it stated that "these records were created after the dates of service at issue." The Council also acknowledged the two written statements from P.A. Gaffney dated February 15, 2024, and February 14, 2025.

57. The Council went on to conclude:

While these records document specific reasons why [Plaintiff] required specialty formula, none of them were contemporaneous to the dates of service at issue. Therefore, there are no *contemporaneous* medical records prior to or during the dates of service that provide the medical justification for coverage of the specialty enteral formula.... Therefore, the LCD and MCPM requirements are not met. In sum, the documentation in the record does not fulfill the medical necessity requirement for coverage of special enteral formula. *See* MCPM Ch. 20 § 100.2.2.2; LCD L38955.

(Emphasis in original).

58.    Having found the items in question to be non-covered, the Council then determined the issue of financial liability. It found Plaintiff to be liable for the costs of the formula and supplies on the basis of Plaintiff having signed the April 2022 ABN.

## FIRST CAUSE OF ACTION: VIOLATION OF MEDICARE STATUTE
### Wrongful Denial of Coverage:
### 42 U.S.C. §§ 1395k(a), 1395x(s)(8), 1395y(a)(1)(A)

59.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

60.    The Secretary's final decision denying Plaintiff's claims for Medicare coverage of her special enteral formula and accompanying supplies is not supported by substantial evidence and is incorrect as a matter of law. The medical record supports that Plaintiff's special formula and related supplies were reasonable and necessary and otherwise met all coverage criteria. The Appeals Council's decision erroneously imposed a requirement that medical records supporting the use of special formula be precisely "contemporaneous" to the dates of service at issue to meet Medicare's "reasonable and necessary" standard.

## SECOND CAUSE OF ACTION: VIOLATION OF MEDICARE STATUTE
### AND REGULATIONS
### Wrongful Determination of Liability
### 42 U.S.C. § 1395pp; 42 C.F.R. §§ 411.400-411.408

61.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth

herein.

62.    In the alternative, even if Medicare were found not to cover the claims in question, substantial evidence demonstrates that the ABN did not constitute effective notice, and Plaintiff should not be found liable for the costs of the formula and supplies. The Council applied an incorrect standard in assessing the validity of the ABN. The supplier's notice to Plaintiff was not grounded in a reasonable assessment of Medicare's likelihood of paying her claims, nor did it comply with required protections for low-income beneficiaries.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.    Reverse the decision of the Secretary and award coverage of Plaintiff's claims for special formula and related supplies;

2.    Should Medicare coverage not be found for the items in question, determine that Plaintiff is not financially liable for the costs of the disputed items;

3.    Alternatively, remand the case to the Secretary with instructions to either cover Plaintiff's claims for special formula and related supplies, or to find that Plaintiff is not financially liable for the costs of the disputed items;

4.    Award Plaintiff reasonable attorneys' fees and costs; and,

5.    Grant the Plaintiff such additional and alternative relief as may be just and proper under the circumstances of the case.

DATED: June 3, 2026                    Respectfully submitted,

/s/ *Majda Abbas*
MAJDA ABBAS
BBO# 701192
mabbas@gbls.org
Greater Boston Legal Services
197 Friend St.

16

Boston, MA 02114
(617) 371-1234

ALICE BERS
BBO# 650608
abers@cla-ma.org
Community Legal Aid
One Monarch Place, Ste. 400
Springfield, MA 01144
(413) 781-7814
Fax (413) 746-3221

*Attorneys for Plaintiff*

17